[Cite as *State v. Newman*, 2018-Ohio-3253.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JESSE LEE NEWMAN | : | Case No. 2017CA00219 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2017CR1135


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      August 13, 2018


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

JOHN D. FERRERO          GEORGE URBAN
Stark County Prosecuting Attorney      116 Cleveland Avenue N. W.
By: KRISTINE BEARD          808 Courtyard Centre
Assistant Prosecuting Attorney          Canton, OH 44702
110 Central Plaza South – Suite 510
Canton, OH 44702-1413

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Jesse Lee Newman appeals the October 30, 2017 judgment of conviction and sentence of the Court of Common Pleas, Stark County, Ohio. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 15, 2017, at approximately 5:15 a.m., Della McElroy was riding around Canton in her car with appellant driving. Appellant pulled over behind a Starbucks on Cleveland Avenue and told McElroy to wait in the car. Appellant then entered the Starbucks, approached the cashier, Rachel Hanna, and asked for a breakfast sandwich and a coffee. When Hanna gave appellant his total, appellant pulled out a screwdriver, pointed it at Hanna, ordered her to open the cash drawer and to hurry. Hanna handed appellant all the cash in the drawer, approximately $138.00. Appellant ran out of the store and back to the car.

{¶ 3}   As appellant drove off, he handed McElroy the money and told her what he had done. Later that day, McElroy reported the matter to the Canton Police Department.

{¶ 4}   Canton Police Detective Darrell Pierson investigated the matter.  He obtained a description of appellant and the clothing he was wearing during the robbery. He also received surveillance video from Starbucks Corporate which showed appellant in the clothing described by McElroy and Hanna. He was unable to copy the entire video, but was able to make still photos from the video. McElroy voluntarily went the police department the day of the robbery and consented to a search of her car. Pierson found the screwdriver in a pocket behind the driver's seat and a black Cleveland Cavalier's hat in the rear cargo area, which appellant had worn during the robbery.

{¶ 5} Appellant was subsequently charged with one count of robbery in violation of R.C. 2911.02(A)(2). Attorney Barry Wakser was appointed to represent appellant. Appellant pled not guilty at his arraignment.

{¶ 6} At a pretrial on August 14, 2017, appellant stated he and Attorney Wakser could not agree on how to proceed and he wanted new counsel. On August 28, 2017, the trial court granted appellant's motion and appointed Attorney Donovan Hill. Appellant signed a time waiver and trial was set for October 2, 2017.

{¶ 7} Before the trial date, appellant filed several pro se motions which were struck by the trial court. Hill then moved to withdraw as counsel because appellant had accused him of forcing him to execute the time waiver. Appellant advised the court that Hill was refusing to ask trial witnesses certain questions. Following a brief discussion, appellant agreed to go forward with Hill as counsel. Trial was continued to October 3, 2017.

{¶ 8} On October 3, following voir dire, Attorney Hill again moved to withdraw. Hill had learned that appellant had filed a grievance against him on October 2, 2017. The trial court declared a mistrial and granted Hill's request to withdraw. Appellant then moved to represent himself. The trial court continued the trial and set a further hearing on appellant's motion to proceed pro se.

{¶ 9} On October 10, 2017, the trial court held a hearing on appellant's motion to waive counsel. The trial court engaged in a lengthy colloquy with appellant in an attempt to dissuade him from representing himself and to ascertain whether appellant understood the implications of his decision. In response to every question and warning, appellant responded he understood the consequences and disadvantages and still desired to waive

his right to counsel. The trial court therefore accepted appellant's waiver of counsel, but appointed Attorney Derek Lowry as standby counsel. Appellant was advised that he would proceed with his own defense, but that Attorney Lowry would sit in the back of the courtroom and be available to answer questions during breaks.

{¶ 10} Appellant's trial took place on October 24, 2017. Attorney Lowry was present and appellant was afforded the opportunity to speak with Lowry during breaks. After hearing all the evidence and deliberating, the jury found appellant guilty as charged. Thereafter, the trial court sentenced to seven years incarceration.

{¶ 11} Appellant filed an appeal and the matter is now before this court for consideration. Appellant raises three assignments of error:

I

{¶ 12} "THE TRIAL COURT DEPRIVED APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE COUNSEL WHEN IT PERMITTED APPELLANT TO REPRESENT HIMSELF WITHOUT A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF HIS RIGHT TO COUNSEL."

II

{¶ 13} "THE TRIAL COURT DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO BE ASSISTED BY EFFECTIVE COUNSEL WHEN IT DENIED HIM ACCESS TO THE ADVICE OF STANDBY COUNSEL."

III

{¶ 14} "THE JURY FUNDAMENTALLY LOST ITS WAY AS APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 15} In his first assignment of error, appellant argues he did not knowingly, intelligently, and voluntarily waive his right to counsel. We disagree.

{¶ 16} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provides that a criminal defendant has a right to counsel. However, a criminal defendant also has the constitutional right to waive counsel and to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In such a situation, "the Constitution * * * require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent * * *." *Iowa v. Tovar*, 541 U.S. 77, 87-88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004, Crim.R. 44(A). "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. The defendant must make an intelligent and voluntary waiver with the knowledge he will have to represent himself, and that there are dangers inherent in self-representation. *State v. Ebersole*, 107 Ohio App.3d 288, 293, 668 N.E.2d 934 (3rd Dist.1995), citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶ 17} In *Gibson*, supra, the Ohio Supreme Court applied the test set forth in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), which established the requirements for a sufficient pretrial inquiry by the trial court into a waiver of counsel:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

{¶ 18} *State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976).

{¶ 19} The record reflects the trial court adhered to this standard and with the requirements of Crim.R. 44(A). The trial court set aside time to conduct a hearing for the specific purpose of considering appellant's decision to represent himself. A significant amount of time was spent advising appellant of the nature of the charges, the potential penalties, post-release control, appellant's knowledge and lack of knowledge of trial procedure, rules of evidence, and rules of criminal procedure, and available defenses. Transcript of pro se hearing, October 10, 2017, 18-31. The trial court additionally urged appellant to reconsider and allow the court to appoint counsel, an offer appellant rejected.

{¶ 20} Appellant appears to suggest he was not competent to waive his right to counsel. He points to the fact that he did not understand trial procedure, his "delusion" that his two previous attorneys were working against him, and his statement that he could represent himself because he has "a sense of awareness that some people don't." He

argues the trial court's decision finding him competent to represent himself in the face of this evidence deprived him of his right to counsel.

{¶ 21} First, "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Although appellant makes a lengthy argument regarding his lack of understanding regrading trial procedure and process, these things are not relevant to appellant's competence to waive his right to counsel.

{¶ 22} Second, a court is not required to make a competency determination in every instance where a defendant seeks to waive his right to counsel. Rather, a competency determination is only required where the record contains "sufficient indicia of incompetence." *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995).

{¶ 23} We have reviewed the entire transcript. Nothing in the record supports a conclusion that the trial court abused its discretion by failing to sua sponte refer appellant for a competency evaluation. Appellant's grievance with counsel appears to have stemmed not from delusion, but rather from differing opinions on trial strategy. Appellant simply believed that his trial strategy would be more effective than that of either of his appointed attorneys. Transcript of proceedings, August 14, 2017, 4-6, Transcript of proceedings, October 2, 2017, 15-16.

{¶ 24} The record fails to reflect that appellant was incompetent to waive his right to counsel. Further, the record does reflect appellant made a knowing and intelligent waiver of his right to counsel. Accordingly, the first assignment of error is overruled.

II

{¶ 25} In his second assignment of error, appellant argues the trial court abused its discretion when it limited appellant's opportunities to confer with standby counsel. Appellant argues that by limiting his interaction with standby counsel to breaks, appellant was prevented from speaking with standby counsel during cross examination of Hanna, the Starbucks cashier. According to appellant, this limited his ability to strategize and effectively represent himself. We disagree.

{¶ 26} In *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus, the Supreme Court of Ohio held "[i]n Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel." *Martin* did not, however, mandate the appointment of standby counsel. At paragraph 28 of the opinion, the Court wrote that "[o]nce the right to counsel is properly waived, trial courts are *permitted* to appoint standby counsel to assist the otherwise pro se defendant." Emphasis added. Therefore, "a pro se defendant does not enjoy an absolute right to standby counsel." *State v. Greenwood*, 2nd Dist. Clark No. 2008CA64, 2009-Ohio-5610, ¶ 46, *State v. Washington*, 8th Dist. Cuyahoga Nos. 96565, 96568, 2012-Ohio-1531, ¶ 9.

{¶ 27}  Standby counsel serves as an important resource for pro se defendants by assisting them to navigate "the basic rules of courtroom protocol" and to "overcome routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). It is well settled that hybrid representation is prohibited. *Martin* at ¶ 32. However, standby counsel may be appointed to attend the trial and answer the defendant's

questions regarding courtroom procedure. *State v. Owens*, 3d Dist. Allen No. 1-07-66, 2008-Ohio-4161, 2008 WL 3822608, ¶ 26. A trial court does nor err by limiting a pro se defendant's conferences with standby counsel, as excessive involvement with standby counsel may destroy the appearance that a defendant is acting pro se. *State v. Crosky*, 10th Dist. Franklin No. 06AP-655, 2008-Ohio-145, ¶ 103.

{¶ 28} In this matter, during the hearing regarding appellant's desire to proceed pro se, appellant was warned that the court would be appointing standby counsel, "[b]ut you must present your own case. He can't sit with you there. He will be sitting in the back of the court room. He can talk to you at breaks." Appellant indicated he understood these parameters. Transcript of Pro Se Hearing, October 10, 2017, 42-43. Additionally, appellant was provided with Mauet's Book on Trial to assist him in formulating questions. *Id.* at 43-44.

{¶ 29} Appellant argues that he was denied the opportunity to speak with standby counsel regarding his formulation of questions for Hanna. However, an examination of the transcript pages relied upon by appellee reveals this is purely speculation. Appellant asked to speak with standby counsel following his cross examination, and re-cross of Hanna. He stated no reason for his desire to speak with counsel, and further was advised once again that he could speak to standby counsel during a break. Transcript of Proceedings, October 24, 2017, at 176.

{¶ 30} Moreover, as pointed out by appellee, appellant lodged no objection to the trial court's ruling. As such, appellant has waived all but plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). In order

to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 31} Appellant has neither raised nor established plain error. Further the evidence in this matter was overwhelming. Appellant's girlfriend turned him in to police, told Detective Pierson what he had done and testified at trial. The victim identified appellant as the perpetrator at trial and stated she feared for her safety when he threatened her with a screwdriver while demanding she hand over the money in her cash drawer. Transcript of proceedings, October 24, 2017, 154-157,164, 173, 181-187.

{¶ 32} The trial court did not err in limiting appellant's access to standby counsel during trial. The second assignment of error is therefore overruled.

III

{¶ 33} In his final assignment of error, appellant argues his conviction for robbery is against the manifest weight of the evidence. Specifically, appellant argues the jury lost its way when it determined the victim's testimony established appellant had brandished a screwdriver to threaten the cashier with physical harm. We disagree.

{¶ 34} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 35} Appellee was required to prove appellant, while committing a theft offense, threatened to inflict physical harm upon the victim. As noted in assignment of error II, evidence in this matter was overwhelming. Appellant nonetheless argues the victim's testimony regarding threat of harm was not credible and further, without a video of the robbery, her testimony cannot be believed.

{¶ 36} The credibility of witnesses, however, is a matter for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967) at paragraph two of the syllabus. Moreover, the testimony of one witness, believed by the trier of fact is sufficient to prove any fact at issue. *State v. Frazier*, 5th Dist. Delaware No. 04CAC10071, 2005-Ohio-3766, ¶ 14. Appellee was not required to produce a video, and there is no evidence in the record to support a conclusion that the jury lost its way in convicting appellant as charged.

{¶ 37} The final assignment of error is overruled.

{¶ 38} We overrule appellant's three assignments of error and affirm the judgment of conviction and sentence of the Stark County Court of Common Pleas.

By Wise, Earle, J.

Gwin, P.J. and

Hoffman, J. concur.

EEW/rw