[Cite as *State v. Meyer*, 2022-Ohio-1226.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 21-COA-012 |
| | : | |
| DAMON MEYER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Ashland Municipal
                             Court, Case No. 20CRB00914


JUDGMENT:                    REVERSED AND REMANDED


DATE OF JUDGMENT ENTRY:      April 13, 2022


APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

ANDREW N. BUSH                           TERRY L. GERNERT
ASST. LAW DIRECTOR                       KENNEDY, PURDY, HOEFFEL &
                                         GERNERT, LLC
1213 E. Main St.                         111 W. Rensselaer St.
Ashland, OH 44805                        P.O. Box 191
                                         Bucyrus, OH 44820

*Delaney, J.*

{¶1} Appellant Damon Meyer appeals from the June 16, 2021 Journal Entry of the Ashland Municipal Court. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

*The trial:  Cattle escape and are in the roadway on August 24, 2020*

{¶2}   The following evidence is adduced from the record of appellant's jury trial.

{¶3} This case arose on August 24, 2020, when Jane Doe was driving home from work on County Road 1775. Doe went over a knoll near appellant's farm and encountered a cow and a calf in the roadway, almost striking them before slamming on her brakes.

{¶4}  Doe had worked on a dairy farm and is experienced in handling cattle.  She used her car horn to scare the cow and calf out of the roadway, then exited her vehicle and physically pushed them into the pasture.  She also noticed other cows and calves at large, though, not confined, in the grassy area in front of a barn in close proximity to the roadway.  Doe watched the cattle to ensure they didn't enter the roadway, and continued to observe cattle wandering throughout the property.

{¶5} Doe was somewhat familiar with the family who owned the farm— appellant's—and checked if appellant's mother was at home with no result. She called the Sheriff's Department because she could not wrangle the cattle herself and keep them out of the road.

{¶6} Deputy Forsthoefel was dispatched to the scene to meet Doe and observed several black cows, unconfined in an open area, within 10 yards of the roadway.  No cows

were in the roadway at that time, but Doe reported what she saw shortly before his arrival. The deputy went to the nearby house and knocked with no response.

{¶7} Forsthoefel inquired with dispatch to find the property owner and was given appellant's name. He was advised that appellant lived near the rear of the property, so the deputy proceeded a short distance down a long lane in an attempt to make contact, without success. Appellee entered an aerial photo of the property as Exhibit 5. Eventually dispatch contacted the property owners and/or a resident. The deputy returned to the scene and appellant and his mother appeared.

{¶8} Forsthoefel observed a gate laying flat on the ground, over which the cattle were evidently exiting the barn. Doe also observed the gate "laying completely down," allowing the cattle to escape. T. 107. Appellee entered photos of the gate on the ground as Exhibits 2 and 3.

{¶9} Upon cross examination, the deputy agreed he did not personally observe cows in the roadway but emphasized they were unconfined and close to the roadway.

{¶10} Appellant represented himself at trial and argued that he is an experienced cattle handler but acknowledged cattle do sometimes get out. T. 95. On this date, he confirmed, calves knocked down a gate in the barn and allowed cattle to escape. Appellant argued, though, that he is not reckless regarding his cattle and regularly checks his fences to prevent incidents like this.

{¶11} Appellant called his neighbor of seven years, a former police officer, as a witness. The neighbor testified he has seen appellant's cows "out" (not confined) several times, but not in the roadway. The neighbor admitted, however, he had no knowledge whether the cows were "out" or in the roadway on the date in question.

{¶12} Appellant also called one of his employees as a witness. The employee testified that although the farm staff regularly checks the fences, sometimes the cows escape their enclosure by various means. This time, calves knocked down a gate, which has happened before. This employee, however, was not present on the date in question and could not testify to the condition of the fence or gate at that time. In general, though, he described appellant as careful and meticulous in his handling of livestock.

{¶13} Appellant's wife testified about their sizeable farming properties and a butcher shop they own, through which they are familiar with federal regulations. The wife testified that yes, the cattle do occasionally escape their enclosures and yes, she has sometimes seen them in the roadway. T. 168. The wife described issues the family has had with fencing, gates, and pastures. Upon cross examination, the wife acknowledged she didn't remember whether she was at the barn on August 24, 2020, and didn't know whether the gate was secure that day.

*Citation and withdrawal of counsel*

{¶14} On August 24, 2020, appellant was cited for one count of "animals in the public roadway" pursuant to R.C. 951.02, a misdemeanor of the fourth degree. Appellant was summoned to appear in Ashland Municipal Court. In lieu of appearance, appellant entered a written plea of not guilty on September 15, 2020 and a pretrial was scheduled for September 29, 2020.

{¶15} Also on September 15, 2020, appellant's defense counsel withdrew from the case. The circumstances of this withdrawal are not in the record; the filing is not a motion to withdraw but is simply entitled "Withdrawal of Representation of Client" and notes the withdrawal is at appellant's request.

{¶16} At the pretrial on September 29, 2020, appellant appeared pro se. At the beginning of the hearing, the trial court asked whether appellant would be represented by counsel and appellant responded he would not.

{¶17} The trial court asked both parties how many trial witnesses they anticipated, and during the ensuing discussion appellant asked the trial court and prosecutor how or if he could properly contact Jane Doe. The trial court responded that it was awkward for the prosecutor to answer appellant's procedural questions because the prosecutor was appellant's adversary, not his ally, and could not provide legal advice. The trial court added that he could not provide legal advice to appellant, either. Then the following conversation took place:

> * * * *.
>
> THE COURT: * * * *. But I am going to offer you one free piece of advice, all right?
>
> [APPELLANT]: Yeah.
>
> THE COURT: You know, if you want to try this case, that is your business, you have every right to represent yourself in court, but no one is going to be able to help you do that. And obviously you are a successful person in your own right, I don't doubt that you can do that. But you do put yourself at a disadvantage because you don't know how to do that, and you don't know the answer to the questions if you have to subpoena a witness, you don't know how to do that.
>
> The Court is not going to be able to help you. We cannot help anybody, you have to do that on your own. If you want to talk to a

witness and they won't talk to you, you don't know how to deal with that because you are not an attorney, I would encourage you to get an attorney. If you don't want to get an attorney, that is your right, but what I am going to do is set this case for trial.

[APPELLANT]: Yeah. How far out are you going to set it, John?

THE COURT: Well, I will ask you, you have the right.

[APPELLANT]: Well, in the hopes that maybe this thing passes, then I mean that would bev--

THE COURT: Tell me how much time you need to get ready, and that is when I will set it.

[APPELLANT]: Four months.

THE COURT: Any objection?

[PROSECUTOR]: (No audible answer.)

THE COURT: All right.

[APPELLANT]: All right.

THE COURT: At the request of the Defendant, I am going to give you a trial date in four months.

[APPELLANT]: Sounds good, John.

THE COURT: I am going to set it for two days.

[APPELLANT]: All right.

THE COURT: All right.

[APPELLANT]: Thank you, sir.

THE COURT: If you change your mind and get a lawyer, let us know. I am not going to set any more hearings, we are just going to try it.

[APPELLANT]: All right. We are just trying the cows out?

THE COURT: What?

[APPELLANT]: We are just going to try the cows out, there is--

THE COURT: That is all there is, there is nothing else.

[APPELLANT]: All right.

THE COURT: And we will try and hopefully all of this stuff will be over.

[APPELLANT]: Okay, John, thank you.

THEREUPON, the hearing was concluded.

T. Pretrial Sept. 29, 2020, 5-7.

{¶18} On October 8, 2020, appellant submitted a written demand for trial by jury.

{¶19} A second pretrial was scheduled for June 8, 2021. T. Pretrial Jun. 8, 2021, 3. Appellant appeared without counsel. The trial court stated the matter would be set for trial in about a week, and asked what appellant wanted to discuss. Appellant replied that the case was a waste of the Court's time because appellee would have to prove not only that his cattle were in the road, but also that he was reckless. Appellee responded that one of its witnesses, a motorist, would testify that at least two calves were in the roadway and she almost hit one of them. Appellant responded that a deputy sheriff responded and the cattle were not in the roadway. Appellant further stated that he runs a federal

facility in which he handles thousands of animals a year, and federal employees could provide letters stating that he is not reckless in his handling of livestock.

{¶20} The trial court responded that "recklessness" did not refer to appellant's character or his handling of livestock in general, but to his actions related to the cattle on the date and time in question, and whether a reckless act of appellant resulted in cattle in the road. Then the following conversation took place:

> * * * *.
>
> THE COURT: * * * *.
>
> It's not about your character, it's about that day, and if they cannot reach their burden, you will be found Not Guilty.
>
> [APPELLANT]: That's right, Your Honor.
>
> THE COURT: But I would say this to you, too, and the reason why I wanted to have a pretrial, you are a smart guy--
>
> [APPELLANT]: Thank you.
>
> THE COURT: --I mean, you are successful in your life and your business, and I am sure that you can represent yourself in this courtroom, but you are not a lawyer. And I know that I said this to you before in the context of this case, you will be at a disadvantage in the trial, if you represent yourself in the trial?
>
> [APPELLANT]: I understand that, Your Honor.
>
> THE COURT: And I will point it out to you on what you just said today, that you can bring in letters to show your character.
>
> [APPELLANT]: Is it okay that I enter that as evidence?

THE COURT: No, it isn't.

[APPELLANT]: Okay.

THE COURT: And that is the reason I am pointing this out. You as the Defendant, the State cannot present character evidence, this is not about your character, they have to prove that day. But you as the Defendant have a right to put in character evidence if you choose to do so. So you can have witnesses come in and say, he's a responsible person with regard to animals, that is not something he would do. He's very conscientious of confine, whatever, they have to be here, they cannot write a letter. That letter would not be admissible.

[APPELLANT]: Okay. (Inaudible.)

THE COURT: But my point is that you did not know that.

[APPELLANT]: Right.

THE COURT: So if you showed up with those letters, I could not let you admit them into evidence.

[APPELLANT]: Sure, my neighbor is a police officer, Your Honor.

THE COURT: But that puts you at a disadvantage in trying your case because you don't know the Rules of Evidence. I would encourage you one last time to get an attorney.

[APPELLANT]: I am probably not, Your Honor, I will do the best that I can.

THE COURT: That is your right.

[APPELLANT]: But yeah.

THE COURT: But I am telling you, it's a disadvantage.

[APPELLANT]: Your Honor, also * * * [appellant argued his neighbors failed to fix the fence and calves got out of the barn, knocking gate down.]

* * * *.

T. Pretrial Jun. 8, 2021, 8-11.

{¶21} The matter proceeded to jury trial on June 16, 2021, and appellant was found guilty as charged. The trial court imposed a fine of $150.00 with no jail sentence.

{¶22} Appellant now appeals from the trial court's journal entry of conviction dated June 16, 2021.

{¶23} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶24} "THE TRIAL COURT ERRED IN ALLOWING APPELLANT TO PROCEED PRO SE WITHOUT ENSURING THERE WAS A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER OF APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL."

**ANALYSIS**

{¶25} In his sole assignment of error, appellant argues the trial court erred in permitting him to proceed pro se without a knowing, intelligent, and voluntary waiver of his Sixth Amendment right to counsel. We agree.

{¶26} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide a criminal defendant has a right to counsel. However, a criminal defendant also has the constitutional right to waive counsel and to represent himself or herself at trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In such a situation, "the Constitution * * * require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent * * *." *Iowa v. Tovar*, 541 U.S. 77, 87-88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004); Crim.R. 44(A). "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. The defendant must make an intelligent and voluntary waiver with the knowledge he will have to represent himself, and the dangers inherent in self-representation. *State v. Ebersole*, 107 Ohio App.3d 288, 293, 668 N.E.2d 934 (3rd Dist. 1995), *citing Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶27} Because courts indulge every reasonable presumption against a waiver of fundamental constitutional rights, waiver of counsel must affirmatively appear on the record. *City of Garfield Hts. v. Brewer*, 17 Ohio App.3d 216, 217, 479 N.E.2d 309 (8th Dist. 1984). A knowing and intelligent waiver will not be presumed from a silent record. *Id.*, *citing Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962).

{¶28} In *State v. Newman*, 5th Dist. Stark No. 2017CA00219, 2018-Ohio-3253, at ¶ 17-18, this Court discussed what must appear in the record to demonstrate a valid waiver of counsel:

In *Gibson, supra*, the Ohio Supreme Court applied the test set forth in *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), which established the requirements for a sufficient pretrial inquiry by the trial court into a waiver of counsel:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976).

{¶29} Appellant points to our decision in *State v. Bristow*, in which we examined the requirements for a knowing, voluntary, and intelligent waiver of counsel. 5th Dist. Richland No. 2020 CA 0006, 2020-Ohio-3999, appeal dismissed*,* 160 Ohio St.3d 1442, 2020-Ohio-5059, 155 N.E.3d 940. In *Bristow,* the record contained minimal discussion between the trial court and the defendant regarding his right to counsel. The trial court initially ascertained appellant was representing himself, but only after the defendant's no-contest plea and prompting by the prosecutor noted that appellant waived the right to have counsel appointed on his behalf or to choose his own attorney. We found the absence of a meaningful colloquy "does not sufficiently demonstrate Appellant's decision to waive counsel was made with 'apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts

essential to a broad understanding of the whole matter' as required by the United States Supreme Court in *Von Moltke, supra,* and the Ohio Supreme Court in *Gibson, supra*." *Bristow,* 2020-Ohio-3999, ¶ 15.

{¶30} The instant case differs significantly from *Bristow.* As noted above in our citations to the record of the pretrial hearings, the trial court had extensive conversations with appellant about his decision to proceed without counsel. This case is therefore not lacking *any* significant colloquy.

{¶31} Here, a note on the appellate record of this case is necessary to make sense of the parties' arguments. The original appellate record did not contain transcripts of the pretrials, only the trial. Appellant argued in his Brief filed on September 8, 2021, that there was no discussion whatsoever of appellant's waiver of counsel. Brief, 5, 7,10, 12. On September 22, 2021, appellee moved this Court to correct the record to permit filing of the pretrial hearings, contending that the waiver of counsel was thoroughly discussed during the pretrials. Appellant filed a memorandum in opposition, arguing that a pretrial hearing is not "open court." We granted appellee's motion on October 29, 2021, and the records of the pretrials were filed on November 18 and 19, 2021. Appellee's Brief was then filed on December 8, 2021, and appellant replied on December 10, 2021.

{¶32} With the entire record before us, then, the issue becomes whether the trial court's pretrial discussions with appellant sufficiently meet the constitutional requirements described in *Von Moltke* and *Gibson*, supra.

{¶33} In all cases where the right to counsel is waived, the court "must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *Gibson,* supra, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976),

paragraph two of the syllabus. "For a petty offense, voluntary and knowing waiver may be shown through the court's colloquy with the defendant." *State v. Wamsley*, 5th Dist. No. 15-COA-030, 2016-Ohio-2885, 64 N.E.3d 489, ¶ 12, citing *State v. Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024 ¶ 54.

{¶34} We contrast the instant case with our decision in *Wamsley*, supra, 2016-Ohio-2885, 64 N.E.3d 489, at ¶ 16, in which we found that a trial court failed to inform the defendant "of the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation, the dangers and disadvantages of representing himself at a jury trial, or other facts essential to a broad understanding of the whole matter." We hasten to distinguish the instant case from *Bristow* and *Wamsley*, and disagree with appellant's argument that the trial court failed to address his waiver of counsel altogether. Instead, we find the trial court extensively reviewed the dangers and disadvantages of representing himself at jury trial, and discussed with appellant facts essential to a broad understanding of the whole matter.

{¶35} However, because we are tasked with "indulg[ing] every reasonable presumption against a waiver of fundamental constitutional rights," *Brewer*, supra, 17 Ohio App.3d at 217, we find the record before us does not contain advisement of the range of allowable punishments, including the fact that appellant faced potential jail time upon conviction of a misdemeanor of the fourth degree. It is evident appellant understood the statutory offense, including the element of recklessness, but it is not evident that he was aware of the possible range of punishments for the offense. We find no discussion of the penalty level of the offense or the range of allowable punishments. Appellant entered a written plea of not guilty and thus did not appear at an arraignment. The record

does not contain a "Your Rights in Court" form or "Waiver of Attorney" form which may have supported the waiver of counsel was given knowingly, voluntarily, and intelligently. *State v. Goler*, 5th Dist. Licking No. 2014 CA 0098, 2015-Ohio-2562, ¶ 10. The circumstances of counsel's withdrawal prior to the written not-guilty plea are also not in the record; nor do we find any advisement that appellant might be entitled to court-appointed counsel.

{¶36} The record before us does not contain evidence that appellant was apprised of the range of allowable punishments for the charged offense, despite the trial court's otherwise broad-ranging discussion with appellant regarding his decision to waive counsel. Accordingly, we conclude appellant did not knowingly, intelligently and voluntarily waive his right to counsel and the sole assignment of error is sustained. *State v. Songer*, 5th Dist. Richland No. 01CA82, 2002-Ohio-2894.

**CONCLUSION**

{¶37} Appellant's sole assignment of error is sustained, the judgment of the Ashland Municipal Court is reversed, and this case is remanded for further proceedings according to law and consistent with this opinion.  *Bristow*, supra, 2020-Ohio-3999, ¶ 19.

By:  Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.