[Cite as *State v. Meyer*, 2023-Ohio-1254.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DAMON MEYER | : | Case No. 22-COA-035 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Municipal Court,
Case No. 20CRB00914


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      April 23, 2023


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

ANDREW N. BUSH      EDWARD CLARK CORLEY
1213 E. Main Street      3 North Main Street
Ashland, OH 44805      Suite 603
     Mansfield, OH 44902

*King, J.*

{¶ 1}   Defendant-Appellant Damon Meyer appeals the September 28, 2022 judgment of the Ashland County Municipal Court finding him guilty of animals on a public roadway, a misdemeanor of the fourth degree. Plaintiff-Appellee is the state of Ohio.

### Facts and Procedural History

{¶ 2}   This case arose on August 24, 2020, when Jane Doe was driving home from work on County Road 1775. Doe went over a hill near appellant's farm and encountered a cow and a calf in the roadway. Doe slammed on her brakes and managed to avoid hitting the animals. Transcript of Trial, (T.) at 125.

{¶ 3}   Doe got out of her car and shooed the cow and calf out of the roadway. She also noticed other cows and calves unconfined in the grassy area in front of a barn in close proximity to the roadway. Doe called the Sheriff's Department and went to see if anyone was home at the farm house. T. 124. Finding no one at the home, Doe went back to watching the unconfined cattle to ensure they didn't enter the roadway. T. 124-125.

{¶ 4}   Deputy Forsthoefel was dispatched to the scene to meet Doe and observed several cows unconfined in an open area near the road. T. 147.  No cows were in the roadway at that time, but Doe reported what she saw shortly before his arrival. Forsthoefel had been to appellant's property on several prior occasions for similar calls. T. 151.

{¶ 5}   Forsthoefel asked dispatch to find the property owner and was given appellant's name. T. 148. He was advised that appellant lived near the rear of the property, so the deputy proceeded a short distance down a long lane in an attempt to make contact, without success. Eventually dispatch contacted the property owners and/or

a resident. Appellant and his mother appeared shortly thereafter. T. 149. Appellant advised the cows were his. T. 150.

{¶ 6} Forsthoefel entered the barn and observed a gate lying flat on the ground, over which the cattle were exiting the barn. He noted no mechanisms by which the gate could have been attached to anything. T. 153. He further observed that the gate was longer than the doorway opening through which the cattle escaped leading Forsthoefel to conclude the gate had been propped up against the opening. T. 183.

{¶ 7} Appellant was charged with Animals Running at Large on Public Roads in violation of R.C. 951.02, a misdemeanor of the fourth degree.

{¶ 8} This case has been to trial three times and this is the second time we have been asked to review the matter. On the second occasion, appellant decided to represent himself at trial and was convicted as charged. On appeal, appellant argued the trial court erred in permitting him to proceed pro se without a knowing, intelligent, and voluntary waiver of his Sixth Amendment right to counsel. This court agreed, vacated appellant's conviction and sentence, and remanded the matter for proceedings consistent with our opinion. *State v. Meyer*, 187 N.E.3d 65, 2022-Ohio-1226 (5th Dist.).

{¶ 9} On remand, appellant again elected to try the matter to a jury and again elected to represent himself. The trial court appointed standby counsel for appellant.

{¶ 10} Appellant's second trial took place on September 28, 2022. The state again presented evidence and testimony from Jane Doe and Deputy Forsthoefel and elicited the above outlined testimony. Appellant presented testimony from two neighbors, a USDA livestock processing and humane regulator, his wife, his mother, and his brother.

{¶ 11} After hearing all the evidence and deliberating, the jury convicted appellant as charged. The trial court imposed a $150 fine and ordered appellant to complete 80 hours of community service. Appellant's sentence was stayed pending this appeal.

{¶ 12} Appellant raises three assignments of error for our review as follow:

I

{¶ 13} "DAMON MEYER'S CONVICTION FOR ANIMALS RUNNING AT LARGE IS NOT SUPPORTED BY THE EVIDENCE SUFFICIENT TO SATISFY THE REQUIREMENTS OF DUE PROCESS UNDER THE UNITED STATES CONSTITUTION AMENDMENTS V AND XIV; OR ALTERNATIVELY IS AGAINST THE MANIFEST WEIGHT OT THE EVIDENCE."

II

{¶ 14} "THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS, BASED UPON THE STATE'S FAILURE TO PROVIDE A WITNESS LIST TO THE DEFENDANT FOR THE TRIAL. "

III

{¶ 15} "THE COURT EXCEEDED ITS DISCRETION WHEN IT PERMITTED AN APPARENTLY SICK AND INATTENTIVE JUROR TO REMAIN ON THE JURY PANEL, FOR THE DURATION OF THE TRIAL."

I

{¶ 16} In his first assignment of error, appellant argues his conviction is against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 17} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v.*

*Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 18} Appellant was charged with one count of permitting animal in a roadway pursuant to R.C. 951.02. That section states:

> No person, who is the owner or keeper of horses, mules, cattle, bison, sheep, goats, swine, llamas, alpacas, or poultry, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land, or cause the animals to be herded, kept, or detained for the purpose of grazing on premises other than those owned or lawfully occupied by the owner or keeper of the animals.

{¶ 19} R.C. 951.99 states, "[w]hoever recklessly violates section 951.02 of the Revised Code is guilty of a misdemeanor of the fourth degree." 2901.22(C) provides:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 20} Here, there was no dispute that the cattle at issue belonged to appellant. T.150. Doe testified she was driving down County Road 1775 when, as she crested a hill in front of Appellant's property, she nearly collided with a cow and a calf which were standing in the roadway, in her lane of travel. Doe pulled into appellant's driveway, got out of her car and chased the cow and calf back onto appellant's property. She observed other cows coming out of the barn and into the yard. Some came toward the roadway. T. 123-124. Until Deputy Forsthoefel arrived, Doe did her best to keep the cattle off the road "so nobody would get hurt." T. 125.

{¶ 21} Deputy Forsthoefel testified he arrived on the scene and observed multiple cows outside their enclosure and in the side yard of the property near the roadway. T.147. He assisted Doe in attempting to keep the animals off the road while dispatch located the property owners. T. 148.

{¶ 22} Appellant arrived and pulled his car up near the barn. T.150. Forsthoefel then returned to his cruiser to check the history of calls to the property noting there had been many previous calls for the same reason. Forsthoefel took his camera to the barn and took photos of the doorway through which cattle were escaping. T. 151. In the doorway, Forsthoefel noted a gate lying flat on the ground and to the outside of the pasture the cattle had escaped from. T. 159. He further noted there appeared to be no way to secure the gate to the doorway, and that the gate was longer than the width of the opening. He observed no chains, ropes, or anything on the fence or the wall to which the gate could have been attached. T. 153. Forsthoefel took photographs to document his observations which were admitted in to evidence at trial as State's exhibits 2-6. The photos show no hardware, rope, or chain with which to secure the fence. T. 158-159.

{¶ 23} Because the gate was longer than the opening, was situated on the side of the barn to the outside of the pasture, and exhibited no fastening devices, Forsthoefel believed the gate had been merely propped up against the opening. T. 173.

{¶ 24} We find this evidence sufficient to support Appellant's conviction for animals at large on a public roadway and further find the jury did not lose its way in so convicting him.

{¶ 25} Appellant makes several arguments to the contrary, first arguing that Jane Doe provided no testimony regarding the adequacy of the enclosure to contain cattle, and the fact that she never entered the barn. But it was not necessary for Doe to testify to these things. In fact, it appears the purpose of her testimony was limited to her observation of the cattle in the roadway.

{¶ 26} Appellant further points to the testimony of his brother who stated he built the barn the cattle escaped from and that he included gate hangers in the post to which the gate was allegedly attached. Appellant's brother further agreed a cow can knock a gate down. T. 210.

{¶ 27} The jury heard the testimony from Appellant's brother and also observed photos of the area of the barn in question. As the trier of fact, the jury was free to believe all, part, or none of any witness's testimony. *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). A jury is further in the best position to view the witnesses and to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh credibility. *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 18 "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, 2014 WL 2583023, ¶ 25. We find the jury did not lose its way in believing the state's witness over Appellant's witness.

{¶ 28} The first assignment of error is overruled.

II

{¶ 29} In his second assignment of error, appellant argues the trial court erred in failing to grant his motion to dismiss based on the state's failure to provide him a witness list. We disagree.

{¶ 30} Criminal Rule 16(I) provides in relevant part that each party will provide opposing counsel with a written list of witnesses it intends to call at trial in its case-in-chief.

{¶ 31} Criminal Rule 16(L)(1) provides:

The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶ 32} We initially note this matter proceeded to trial on three occasions under the same case number. On each occasion the state's witnesses, remained the same; Jane Doe and Deputy Forsthoefel. The state filed its witness list in this matter on October 2, 2020. Docket at 12.

{¶ 33} Appellant wrote several letters to the trial court stating he believed he had not received complete discovery in this matter, and then filed a formal demand for discovery on September 14, 2022. The trial court held a hearing on the same day, specifically to address appellant's discovery complaints.

{¶ 34} The state indicated appellant had been to the law director's office on August 29, 2022, had been provided with copies "of everything" and signed a receipt for the same. Transcript of hearing (T.H) at 8. During the hearing, appellant argued he had not received all of Deputy Forsthoefel's body camera video evidence. T.H 11-12. Appellant further appeared to be requesting photos from an incident that had nothing to do with this

case, but rather an incident that predated this matter, and involved his neighbors. At no time during the hearing did appellant ever state he had not been provided a witness list.

{¶ 35} On the morning of trial, immediately before voir dire, Appellant alleged for the first time he had not received a witness list and moved to dismiss the case on that basis. T. 7. The state responded it had provided the witness list and further, that the witnesses had not changed from the first two trials in this matter. T. 7 and 9.[1] The trial court overruled Appellant's motion.

{¶ 36} A trial court has discretion in determining a sanction for a discovery violation. *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 37} We find the trial court did not abuse its discretion in overruling Appellant's motion. The state filed its discovery, including a witness list, on October 2, 2022, the witnesses remained the same throughout the life of the case, and the state indicated it provided Appellant with a copy of that witness list. Certainly, the state would have a responsibility to supplement discovery and provide a new list if the original list changed, but it did not. Further, even if we assume for the sake of argument that the state did not provide appellant with a copy of the list, appellant does not identify what prejudice he suffered. He merely argues he did not receive a written list. We find no error in the trial court's ruling.

{¶ 38} The second assignment of error is overruled.

---

[1] We note page 8 of the transcript is missing which includes part of the witness list conversation. It is Appellant's burden to provide a complete record.

III

{¶ 39} In his final assignment of error, appellant argues the trial court exceeded its discretion when it permitted a sick and inattentive juror to remain in the panel for the duration of the trial. We disagree.

{¶ 40} R.C. 2945.29 permits a court to replace a juror with an alternate: "If, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty, the court may order him to be discharged."

{¶ 41} "A trial judge is empowered to exercise 'sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired.' " *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 46, quoting *State v. Hopkins*, 27 Ohio App.3d 196, 198, 500 N.E.2d 323 (11th Dist.1985). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 42} Appellant's third assignment of error pertains to a point in trial during direct examination of Deputy Forsthoefel where the following took place:

> [Counsel for the State speaking to a juror]: Are you okay? Judge, we
> need to stop for a minute.
> (Discussion with juror who is getting sick)
> [The Court]: Let's call a recess here until we determine what the
> problem is.

(THEREUPON, the Court is in recess.)

The Bailiff: Let me stop the recording. Sir, your record is on.

The Court: Thank you.

The Bailiff: All rise for the jury please.

The Court: Be seated. Okay, after a short recess, the jury is back in the jury box and the parties are back in the courtroom and the inquiry about what we have in Voir Dire doesn't change because we are in the middle of the hearing (inaudible) Ms. (inaudible) are you feeling better? Is there a reason that you cannot proceed as a juror?

Juror: No.

The Court: Can you do me a favor, if you don't feel well, just raise your hand and we can call it a day at any time, fair?

Juror: Yes.

{¶ 43} T. 163-164.

{¶ 44} This is the extent of the record regarding any illness involving the juror. Contrary to Appellant's argument, there is no indication in the record that the juror was inattentive and unable to perform her duty as a juror. Moreover, Appellant never asked that the juror be removed from the panel. We find the trial court did not abuse its discretion by failing to sua sponte remove the juror.

{¶ 45} The final assignment of error is overruled.

{¶ 46} The judgment of the Ashland County Municipal Court is affirmed.


By King, J.,

Gwin, P.J. and

Delaney, J. concur.


AJK/rw